No. 25,317.

ALLISON ANDREWS, *Appellant,* v. E. M. RICHARDS et al., doing business as THE VINLAND TELEPHONE EXCHANGE, *Appellees.*

SYLLABUS BY THE COURT.

1. ORAL CONTRACT — *For Connection With Telephone System — Statute of Frauds.* An agreement between the managers of a number of connecting telephone lines and one who wishes to share in the benefits of their organization that he will build a line, connect it with theirs and pay $10 for one year's service, and thereafter pay such annual amount as they may fix, is within the provision of the statute of frauds requiring evidence of a contract which is not to be performed within a year to be in writing. Obligations arising under it during the time such contract is acted upon may be enforced, but neither party to it can require the other to continue in its performance beyond the current year for which services have been furnished or paid for.

2. SAME—*Action to Enforce Contract—Demurrer to Petition.* An action to enjoin the managers of such a telephone system, if otherwise maintainable, will lie against them, and the omission to make the owners defendants constitutes at most but a defect of parties, which is not a ground of demurrer.

3. INJUNCTION—*Against Mutual Telephone System—Company Not Subject to Control of Public Utilities Commission.* Where an injunction will not lie without an application being first made to the public utilities commission, a petition seeking that relief without alleging such an application is demurrable for want of facts constituting a cause of action, but not for lack of jurisdiction. The association described in the petition here involved is a mutual telephone company, not subject to the control of the utilities commission.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed June 7, 1924. Affirmed.

*J. B. Wilson,* of Lawrence, for the appellant.

*C. A. Smart,* of Lawrence, for the appellees.

The opinion of the court was delivered by

MASON, J.: Allison Andrews brought this action against a number of persons, called the "central board," who were intrusted with the management of a group of local telephone lines, to enjoin the defendants from refusing to allow him, as owner of one of the lines, to participate in the benefits of the arrangement under which they are operated together. A general demurrer to his petition was sustained and he appeals.

1. The ruling is sought to be upheld upon the ground, among

others, that the oral contract relied upon by the plaintiff, and alleged by him to have been made between him and the defendants, was one "not to be performed within the space of one year from the making thereof," and therefore within the statute of frauds.  (R. S. 33-106.)    The defendants urge that although the contract was effective to define the rights and obligations of the parties so long as they were acting under it, no action could be brought to charge either party upon it in the sense of requiring the continuance of its performance.  The plaintiff contends that the statute does not apply because the contract was capable of performance within one year from the time it was made.  The petition describes the contract—which has been acted upon for some eight years—in these words:

"The plaintiff at a time about eight years prior to the filing of this action, the plaintiff being unable to state the exact date, plaintiff entered into a verbal agreement with said central board,  . . .  whereby it was agreed that the plaintiff should construct a private telephone line from the central exchange at Vinland, Kansas, to his own home. . . .  furnishing all material and labor therefor, and paying all expenses incidental to the construction of said line; that the plaintiff should maintain said line and keep the same in repair, should furnish his own receiver or telephone apparatus at his home, make his own connection at his own ————, and should pay to the said central board the sum of $10.00 in cash; and, thereafter, annually pay to said board such fee for the service hereinbefore mentioned as said board should charge from year to year; it being understood, however, that said fee should be a reasonable fee and should be based upon the necessary expense of operating the system, it being understood that the said system was not operated for private profit to anyone. . . .  That upon the plaintiff's performance of the acts hereinbefore set out, and upon plaintiff's making connection of his line with the private drop to be furnished, in consideration of the said $10.00 just mentioned, by the said central board on the mechanical apparatus at the said central exchange, which is also usually referred to in telephone parlance as the central board, which the plaintiff did, the defendants, as the central board of representatives as aforesaid, would, as long as the plaintiff performed the obligations made incumbent upon him in said agreement, furnish to the plaintiff continuous and efficient telephone service, giving him connection through their central apparatus with all parties connected therewith in any way."

We interpret the contract as meaning that the plaintiff should construct a line from Vinland to his home, connect it with the others, and then pay $10, thereby entitling him to the benefits of the operating arrangement for a year from the time of connection and payment, a further payment, of an amount to be afterwards fixed, to be made at the end of that year and of each succeeding year.  It was a contract for a year's service, made before the commencement of the year, and requiring the doing of antecedent acts necessarily taking

some time, and was therefore within the statute. (27 C. J. 186.) Moreover the plaintiff undertook not only to make the first payment, but the subsequent ones, and the defendants to furnish service as long as he performed the obligations he had assumed. In the absence of some provision as to duration, such a contract is ordinarily regarded as terminable only by mutual consent. (13 C. J. 604.) But if it is placed in the same class with contracts involving special confidence, such as those for personal services, which either party may end at will, the plaintiff can obviously make no effective complaint of the refusal of the defendants to continue operations under it. The situation differs from that presented in any of the several cases cited by the plaintiff; from that in *A. T. & S. F. Rld. Co. v. English,* 38 Kan. 110, 16 Pac. 82, because there the contract had been entirely performed on one side by the giving of a deed; from that in *Aiken v. Nogle,* 47 Kan. 96, 27 Pac. 825, because there the controversy was over the payment of wages for the time services had been rendered; and from that in *Pierson v. Milling Co.,* 91 Kan. 775, 139 Pac. 394, because there the contract was to end with the death of a party, who might die in less than a year.

2. Another objection made to the petition is that the defendants are merely agents of the owners in the management of the lines. They are the persons whose actions are sought to be controlled by the injunction. If the omission to make the owners defendants is important it is because it results in a defect of parties, and this is not a matter to be raised by demurrer. (*Yount v. Hoover,* 95 Kan. 752, 755, 149 Pac. 408.)

3. The demurrer was based on two grounds—want of facts sufficient to constitute a cause of action, and lack of jurisdiction in the court. The plaintiff says the trial court did not make any ruling on the second ground, and therefore the question whether he was required to seek relief first from the public utilities commission was not passed upon and is not here for review. If the plaintiff could not obtain an injunction without an order from the utilities commission his petition failed to state a cause of action. In that case the district court would have jurisdiction to grant an injunction, but would commit error in doing so. The petition seems to show, however, that the telephone system is a mutual one, excepted from the operation of the utilities act. (R. S. 66-104.)

The judgment is affirmed.